143 So.2d 541 (1962)
GENERAL GUARANTY INSURANCE COMPANY, a Corporation, Appellant,
v.
Harry E. MOORE, Robert Simmons, and L.L. Stone, Inc., Appellees.
No. 2965.
District Court of Appeal of Florida. Second District.
August 1, 1962.
*542 Thomas C. MacDonald, Jr., and William T. Keen, of Shackleford, Farrior, Stalling, Glos & Evans, Tampa, for appellant.
Robert C. Lane and Curtiss B. Hamilton, Miami, for appellee Moore.
ALLEN, Judge.
This appeal is brought by a workmen's compensation carrier from a final order entered on its subrogation claim in an action arising under Section 440.39(4), Florida Statutes, 1957, F.S.A. Under this provision, if an employee subject to the workmen's compensation law has been injured by a third party tort-feasor and fails within one year to bring an action against said third party, the employer or compensation carrier is permitted to sue the third party for the benefit of the employee and the employer or carrier (in this case carrier) as the case may be.
Herein, the parties will be referred to as they appeared in the lower court. Appellant was the plaintiff compensation carrier, appellee, Harry Moore, was the injured plaintiff-employee and the remaining appellees were defendants-third party tort-feasors.
As a result of an accident which occurred on June 10, 1959, the carrier paid compensation benefits to Harry Moore. Moore did not file suit against the allegedly negligent third party tort-feasors within one year from the accident. Accordingly, the carrier, being subrogated to the claim of Moore under F.S. Section 440.39, F.S.A., instituted suit in the name of Moore on June 27, 1960, against the defendants under the provisions of subsection (4) of said statute.
*543 Shortly thereafter, suit against the same defendants was instituted by Moore individually, being represented by his own attorney. Counsel for Moore also filed a motion to dismiss the instant suit brought by the carrier, claiming that the same was not undertaken in good faith in that counsel for Moore had been attempting to negotiate a settlement with the defendants at the time the carrier filed its suit and that the carrier was so informed at the time the period of one year from the date of the accident had elapsed.
Subsequently, as a result of correspondence between the carrier's counsel and Moore's individual counsel, both counsel agreed to participate in the prosecution of the original (instant) action brought by the carrier and the suit brought by Moore, individually, was dropped. The substance of the understanding reached is expressed in the following excerpt from a letter written by counsel for the carrier to Moore's counsel.
"We have considered further the proposition which you put to us in personal conversation concerning the prosecution of the captioned case. We are agreeable to the offer that you made; the general effect of which was that we would receive 100% recovery of the compensation lien on behalf of the insurance carrier whom we represent and that we would receive in addition to this 10% of your attorneys' fee on any amount recovered in excess of the compensation lien. You informed us that you have this on a one-third contingency and 40% on appeal.
"We, of course, intend to remain in the suit and appear as attorneys of record. We shall, of course, work with you in every way possible to effectively prosecute the case. * * *"
Still later, as a result of Moore's lack of confidence in and failure to cooperate with counsel for the carrier, the arrangement was altered as expressed in the following excerpt from another letter written to Moore's counsel by counsel for the carrier.
"This case has given us concern from the beginning due to the particular personality of the plaintiff, Harry E. Moore. As you know, this man sustained a very serious injury and this law suit means a very great deal to him. He has no confidence in our firm nor do we have his cooperation in any sense of the word. For these reasons, after further reflection, we do not want to represent Mr. Moore in any degree for his personal claim over and above the amount of the compensation claim. It is therefore our desire to withdraw from any participation in fee or moneys recovered over and above the amount of our client's compensation lien which is 100%, as you know. We, of course, shall continue to appear as attorneys of record along with your firm and will continue to work with you in every way to successfully prosecute this suit, however, we feel that you should be the primary attorney in the suit and should handle the actual preparation and trial due to your relationship with Harry Moore."
From this point on the case was largely handled by Moore's attorney. Ultimately the case came to trial, during the course of which a settlement of $30,000 was proposed by the defendants and accepted by counsel for Moore. The lower court orally awarded the carrier the sum of $3,700 from said settlement, although it was undisputed that its compensation payments totaled $7,777.07. No written order was entered and on petition for rehearing a lengthy colloquy took place between the trial judge and respective counsel in the presence of a court reporter in order to document the various factors which influenced the award as made. The trial judge reaffirmed his award to the carrier of $3,700 and, in addition, granted an oral motion by Moore's counsel for attorney's fees, awarding him $400 of the $3,700 to be paid to the carrier by the defendants. *544 These rulings were finalized in a formal written order from which the carrier has appealed.
Two questions were raised.
1. Whether or not the trial court erred in failing to award the compensation carrier the entire amount of its compensation payments.
2. Whether or not the trial court erred in awarding the plaintiff an attorney's fee from the $3,700 awarded the compensation carrier.
We hold that in both respects the trial court committed reversible error.
The determination of the amount to be awarded a compensation carrier on a subrogation claim is controlled by statute in this state. The applicable statute in this case is Section 440.39(4), Florida Statutes, 1957, F.S.A. the law in effect at the time of the injury to Moore. See Hecht v. Parkinson, Fla. 1954, 70 So.2d 505; Employers' Ins. Co. of Alabama v. Miller, Fla. App. 1960, 121 So.2d 813; Aaron v. Florida Power & Light Co., Fla.App. 1961, 126 So.2d 889.
Said subsection (4) reads:
"(4) If the injured employee or his dependents, as the case may be, shall fail to bring suit against such third party tort-feasor within one year after the cause of action thereof shall have accrued, the employer if a self-insurer, and if not, the insurance carrier, may institute suit against such third party tort-feasor either in his own name or as provided by subsection (3) of this section, and in the event suit is so instituted, shall be subrogated to and entitled to retain from any judgment recovered against or settlement made with such third party, the following: All amounts paid as compensation and medical benefits under the provisions of this law and the present value of all future compensation benefits payable, to be reduced to its present value, and to be retained as a trust fund from which future payments of compensation are to be made, together with all court costs, including attorney's fees expended in the prosecution of such suit, to be prorated as provided by subsection (3) of this section. The remainder of the moneys derived from such judgment or settlement to be paid to the employee or his dependents, as the case may be." (Emphasis supplied.)
Under this subsection, when the carrier itself institutes the action against third party tort-feasors, as happened here, it is entitled to recover its actual compensation outlay plus the present value of future compensation benefits payable. If this statute had been followed to the letter in the instant case, the carrier would have recovered $7,777.07.
Had this suit been instituted within one year of the accident by the employee Moore, however, the amount to be awarded the carrier on its subrogation claim would have been controlled by Section 440.39(3), F.S. 1957, F.S.A., which reads:
"(3) In actions at law against a third party tort-feasor, the employee, or his dependents, or those entitled by law to sue in the event he is deceased, shall sue for the employee individually, and for the use and benefit of the employer if a self-insurer, or employer's insurance carrier, in the event compensation benefits are claimed or paid, and such suit may be brought in the name of the employee or his dependents or those entitled by law to use in the event he is deceased, as plaintiff or, at the option of such plaintiff may be brought in the name of such plaintiff and for the use and benefit of the employer or insurance carrier, as the case may be. Upon suit being filed the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, *545 which said notice shall be recorded and the same shall constitute a lien upon any judgment recovered to the extent that the court may determine to be their pro rata share for compensation benefits paid under the provisions of this law, based upon such equitable distribution of the amount recovered as the court may determine, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for plaintiff's attorney, such proration of court costs and attorney's fees to be made by the judge of the trial court upon application therefor and notice to adverse party. Notice of suit being filed and notice of payment of compensation benefits shall be served upon the compensation carrier and upon all parties to the suit, or their attorneys of record." (Emphasis supplied.)
It is readily observed that in cases arising under subsection (3), quoted above, the carrier can and often does receive substantially less than its actual compensation outlay for it is entitled thereunder to only its "pro rata share" of the amount recovered from the defendants "based upon such equitable distribution of the amount recovered as the court may determine." The "equitable distribution" to the carrier rarely equates with or approaches actual compensation outlay. See Arex Indemnity Co. v. Radin, Fla. 1954, 72 So.2d 393; Employers Insurance Co. of Alabama v. Miller, supra.
Such a discrepancy between the two subsections as to amounts allowed to be recovered by the carrier is simply legislative encouragement to the injured workman to bring his common law action against third party tort-feasors with minimum delay. Obviously he will fare better as to the amount he ultimately recovers by bringing his own action, for the amount recoverable by the carrier in this event is statutorily curtailed. Likewise, this monetary encouragement to the employee, statutorily imposed, to bring his action within one year serves to promote the laudable objective of speedy compensation to all aggrieved parties.
As stated by Larson in Volume 2 of his treatise on Workmen's Compensation, § 74.31, p. 209:
"Under most subrogation statutes the payor of compensation gets reimbursement for the amount of his expenditure as a first claim upon the proceeds of the third-party recovery, and the employee gets the excess. Some of the leading compensation states are beginning to vary this slightly. In Massachusetts the employee gets only four-fifths of the excess, presumably on the theory that the subrogee will thereby have a greater incentive to sue or settle for more than the bare amount necessary to cover the compensation expenditure. In New York the employee gets the entire excess over the employer's compensation outlay if the employee himself is the plaintiff, but only two-thirds if the employer or insurer is the plaintiff. This gives the employee, who under the New York statute has the first opportunity to sue, a financial motivation for taking direct action against the tortfeasor; it also impels the subrogee, if the cause of action passes to him, to achieve as large a recovery as possible, and to refrain from the temptation of making an easy settlement for no more than the out-of-pocket compensation cost. Wisconsin has varied the formula in the other direction by specifying that the employee must always be paid, at the absolute minimum, one-third of the damages recovered, regardless of whether this cuts into the amount needed to reimburse the carrier; and, in any case, the employee receives the entire excess over compensation outlay and costs."
See Skakandy v. Wreckers & Excavators, 1948, 274 App.Div. 220, 81 N.Y.S.2d 841, aff'd 298 N.Y. 888, 84 N.E.2d 805 (1949).
*546 Having reviewed the transcript of the proceedings which took place on the carrier's petition for rehearing on the amount awarded to it on its subrogation claim, it is apparent to this court that the trial judge arrived at the amount recoverable by the carrier by determining its pro rata share based upon an equitable distribution as provided in Section 440.39(3), F.S. 1957, F.S.A., rather than awarding the carrier, as he should have, its total compensation outlay as provided for in Section 440.39(4). In other words, the trial judge treated the instant case as a "subsection (3) case" when in fact it properly fell within the ambit of subsection (4). The colloquy which took place between respective counsel and the trial judge discloses that the latter did so on one or both of two erroneous theories.
This case, as aforesaid, was brought by the carrier after one year had elapsed from the accident which caused injury to Moore, the employee. It is probably unlike the normal situation envisioned by the legislature in passing subsection (4) of § 440.39 in that, while the action was instituted by counsel for the carrier, it was actually tried and settled by the injured employee's own attorney. However, as shown by the exhibits hereinbefore quoted, such a procedure was dictated by the peculiar circumstances of this case and cannot operate to convert the cause to one brought by the employee under Section 440.39(3) in determining the amount to which the carrier is entitled on its subrogation claim. It clearly appears from the record that counsel for the carrier permitted Moore's counsel to handle the case as much out of concern for Moore's interest as for the carrier's. The carrier cannot be deemed to have waived or abandoned its right to subrogation benefits under Section 440.39(4) merely because it permitted the employee's attorney to prosecute the action against third parties. Insofar as this may have been a factor causing the trial judge to adjudicate the carrier's subrogation claim on a pro rata basis, it was error.
A more clearly stated reason for the trial judge making the reduced award to the carrier had to do with certain statements purportedly made by counsel for the carrier who was in attendance at the main trial when the defendants' settlement offer was accepted by Moore's attorney. These statements were to the effect that the carrier might be willing to take something less than one hundred per cent of its actual compensation outlay but that the maker of the statements had no authority to bind the carrier to any agreement to take less. Without waiting for the carrier's counsel to obtain such information from the carrier, Moore's counsel settled with the defendants for $30,000. It was the trial judge's view and is the view of the appellee here that Moore was prejudiced by these statements in that he would not have settled for $30,000 had he known the carrier intended to insist on receiving one hundred per cent of its subrogation claim. This view is without merit. The trial judge and counsel for Moore are charged with knowledge of the carrier's right to full recovery for its compensation outlay under Section 440.39(4). The fact that the carrier's counsel, with no apparent authority to bind the carrier, expressed an opinion as to what the carrier might accept cannot impinge on this statutory right to full recovery. Any prejudice to Moore which may have resulted could have been obviated by the simple expedient (which elementary caution and diligence would seem to have dictated) of postponing the negotiations for settlement at trial until the carrier could have been heard as to what amount less than full recovery it was willing to accept on its subrogation claim.
The good faith of the carrier and its counsel in this regard is demonstrated by the fact that the carrier, after Moore had settled with the defendants, offered to accept $5,000 on its subrogation claim, substantially less than the $7,777.07 to which it was entitled under the statute. Had the trial judge granted said reduced amount of $5,000, it is probable that the matter of subrogation *547 would have been satisfactorily concluded below.
None of the aforementioned factors authorized the lower court to adjudicate an equitable distribution to the carrier as provided in Section 440.39(3). Moreover, since the carrier was entitled to full recovery under the statute as of right, it is not precluded by having indicated, after settlement with the defendants, a willingness to accept less ($5,000 which was refused by appellee), from insisting on full recovery in this appeal. We hold, therefore, that the carrier was entitled to the full amount of its subrogation claim, $7,777.07.
Turning next to the sum of $400 which was granted Moore's counsel as attorney's fees out of the carrier's award, we note that the procedure for awarding attorney's fees expended in an action brought by a carrier under Section 440.39 (4) is controlled by Section 440.39(3) pertaining to actions brought by the injured employee. In other words, the method of awarding attorney's fees is the same regardless of which subsection the cause arises under. Under subsection (3) the carrier and the employee contribute their pro rata shares toward incurred attorney's fees out of their respective awards. Again, the statute appears to contemplate a situation where the cause is handled by either attorneys for the employee or attorneys for the carrier, but not by the two in combination, as happened here. In this case it is true that Moore's counsel actually prosecuted the cause in its later stages, carrying it on to trial and subsequently settlement. It is equally true, however, that counsel for the carrier participated in the early stages of the cause to a considerable extent and was also present in the final stages. The complaint that eventually became one of the pleadings which contributed toward directing the course of the trial was drawn by the carrier's counsel. In addition, some of the correspondence between respective counsel, appearing in the record as exhibits, indicates that counsel for the carrier was instrumental in helping to determine what was to prove successful pre-trial strategy. Therefore, under the peculiar facts of this case, equitable considerations would appear to require that each counsel look to his own client for any fee to which he is entitled. Moreover, the exhibits hereinbefore quoted indicate that respective counsel so stipulated. The fact that they later became embroiled in the instant subrogation grievance does not vitiate such a stipulation. The granting of attorney's fees to Moore's counsel out of the carrier's award was error.
The order appealed is reversed for further proceedings not inconsistent with this opinion.
Reversed.
SHANNON, C.J., and ELMORE, FRANK H., Associate Judge, concur.