152 So.2d 805 (1963)
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant,
v.
June R. McNAIR, Appellee.
No. D-411.
District Court of Appeal of Florida. First District.
May 2, 1963.
Rehearing Denied May 20, 1963.
*806 Whittaker & Pyle, Orlando, for appellant.
Isham W. Adams; Darrel Carnell, Daytona Beach, for appellee.
RAWLS, Judge.
Hartford Accident and Indemnity Company appeals from an order determining its subrogation rights under the Workmen's Compensation Act, Section 440.39(3) (a), Florida Statutes, F.S.A.[1]
James S. McNair, Jr., a surveyor, was killed during the course of his employment, and his employer's carrier, Hartford Accident and Indemnity Company, recognized the compensability of his death. McNair was survived by his widow, June R. McNair, their two children, one stepson, and four children of a previous marriage. Division of the weekly proceeds payable by Hartford was agreed to between all the parties.
Appellee, June McNair, filed a wrongful death action against the third party tort feasor, and on June 12, 1962, Hartford filed its notice of payment of compensation and medical benefits, which stated that the total compensation to be paid was $7,899.40 and claimed a lien for that amount. After the widow and third party tort feasor voluntarily settled the wrongful death action for $40,000, said action was dismissed with prejudice on June 27, 1962. On June 28, 1962, the widow filed her motion in the Circuit Court praying that Hartford's subrogation rights, if any, be determined. On July 5, 1962, Hartford filed an amended notice of payment reflecting that it would pay compensation benefits in the sum of $15,249.40.
The trial court, in an order dated July 12, 1962, denied Hartford's request for leave to amend its notice of compensation. It then determined Hartford's share of the $40,000 settlement in the following manner: First, the trial judge found that the widow's compensable loss was $79,000 and that her net recovery after deducting attorney's fees (33 1/3%), costs, and $5,000 for loss of consortium, would be $21,523.85, which represents 27% of the compensable loss. The trial judge awarded the carrier 27% of $7,350, (this representing the sum initially claimed by Hartford less disbursements for medical expenses in the sum of $49.40 and funeral expenses in the sum of $500.00) and reduced same to a present value of $1,706.67.
Hartford now complains of the entire order and specifically objects to the trial court's actions in the following particulars:
1. In refusing to consider the sums paid for medical and funeral expenses.
2. In failing to consider the amended notice changing the amount claimed from $7,899.40 to $15,249.40.
3. In finding that the settlement sum ($40,000) did not constitute full legal compensation.
4. In first deducting from the settlement the sum of $5,000 for loss of consortium together with attorney's fees (33 1/3% of $40,000) and costs.
5. In the method of ascertaining 27% as representing the widow's percentage of recovery and by applying said percentage in determining Hartford's recovery.
*807 With reference to the first point we conclude that the trial court erred in not considering the amount expended by the carrier for medical benefits. Material portions of F.S. Section 440.39(3), F.S.A. are: "* * * [The insurance carrier] may file in the suit a notice of payment of compensation and medical benefits * * *." [Emphasis supplied.] We find that the legislature in allowing medical benefits to be included in the notice of expenditures by the carrier intended that such sums would be considered by the court in making distribution of the proceeds recovered. Likewise, the express language quoted negates Hartford's contention that "compensation benefits" as used in the latter portion of said section encompasses all payments made by the carrier including medical and funeral expenses. In construing this section, we find that the legislature, by specifically including "compensation" and "medical" in the provision for filing notice of payment, excluded funeral expenses as an item to be considered by the court in the proceedings provided therein.
As to Hartford's point two, we conclude that Hartford was estopped from filing a second notice of payment of compensation and medical benefits. The time-table of events recited above reflects: suit was filed by the widow; Hartford filed its notice reflecting its expenditures in the sum of $7,899.40; the widow settled with the third party. It was only after settlement by the widow, the dismissal of her suit, and notice of hearing given to Hartford for the determination of its subrogation rights that Hartford attempted to amend its claim. Hartford was not confronted with any contingencies when it filed its initial claim. The employee was dead. All medical and compensation benefits payable were known to Hartford. The widow, in negotiating a settlement, relied upon the claim filed by Hartford. Such action on the part of Hartford, in attempting to amend its claim after settlement was effectuated is analogous to an attempt to adduce proof of known additional damages after a jury has rendered its verdict. The trial judge was correct in rejecting the purported amended notice of payment of compensation and medical benefits.
We shall not belabor the consideration of the remaining points. Associate Judge Moody in a concise and able opinion disposed of these points in Southern Farm Bureau Casualty Insurance Company v. Bennett[2] which involved a similar factual situation as revealed here. There a settlement of $35,000 was effectuated with plaintiff contending her actual loss as being $90,000. In affirming the trial court's apportionment of the proceeds, Judge Moody quoted the following language from Arex Indemnity Company v. Radin:[3]
"An endless variety of situations may arise in cases where an employee covered by compensation through his own initiative effects a recovery against a third party tort feasor. The situations may include in any given case, a wide or narrow range between amount of medical expenses and pain and suffering involved, wide disparity between the amount of actual damage sustained and the actual recovery possible on any judgment obtained, and a wide range of difficulties attending the litigation itself and the uncertainty of recovery therefrom after final judgment.
"We think any effort to establish a precise formula to encompass all variables that may be present in situations arising under Section 440.39(3), supra, would be a simple case of judicial legislation. The statute sets up and prescribes the standard. If the language there used is undesirable, the matter is one for legislative action."
*808 The subject statute provides by its terms a broad discretion to be exercised by the trial judge upon equitable considerations, and we cannot say that this discretion was abused by the trial judge in this cause in arriving at the sums so awarded
By cross appeal, appellee contends that the trial judge erred in prorating the compensation by including the sums payable to appellee's children and by not limiting the pro rata share to the sums payable to appellee. The overall purposes of the Workmen's Compensation Act construed together with the subrogation provisions as cited herein, leads us to the conclusion that such contention is without merit. The cross appeal is denied.
The trial judge is directed to amend his final order of July 12, 1962, apportioning the medical expenses on the same basis as the compensation; otherwise the order is hereby affirmed.
CARROLL, DONALD K., C.J., and WIGGINTON, J., concur.
NOTES
[1] F.S. § 440.39(3) (a), F.S.A.: "* * * Upon suit being filed [against a third party tort feasor] the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, which said notice shall be recorded and the same shall constitute a lien upon any judgment recovered to the extent that the court may determine to be their pro rata share for compensation benefits paid or to be paid under the provisions of this law, based upon such equitable distribution of the amount recovered as the court may determine, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for plaintiff's attorney * * *."
[2] Southern Farm Bureau Casualty Ins. Co. v. Bennett, 131 So.2d 499 (Fla.App.2d 1961).
[3] Arex Indemnity Co. v. Radin, 72 So.2d 393 (Fla. 1954).