172 So.2d 834 (1965)
SECURITY MUTUAL CASUALTY COMPANY, a corporation, Appellant,
v.
Elizabeth GRICE and National Trucking Company, a Florida Corporation, Appellees.
No. 4766.
District Court of Appeal of Florida. Second District.
March 17, 1965.
*835 James E. Thompson, of Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellant.
L. Grady Burton and John W. Burton, Wauchula, for appellee Grice.
SMITH, D.C., Associate Judge.
This appeal brings on for review an order apportioning a judgment between an employee's dependent and the employer's insurance carrier as provided in Section 440.39(3) (a) Florida Statutes 1961, F.S.A.
The record discloses that one William Ray Grice, while employed as a switchman on a freight train, was killed when a truck struck the train at a crossing on March 13, 1962, in Polk County, Florida. His widow, Elizabeth Grice, one of the appellees herein and hereinafter referred to as the plaintiff, brought suit against the National Trucking Company, the party responsible for her husband's death. The appellant, Security Mutual Casualty Company, the insurance carrier for Grice's employer, began paying compensation to the plaintiff on March 14, 1962, and filed its notice of payment of compensation benefits herein on September 29, 1962. A trial was had on June 20, 1963, resulting in a jury verdict for the plaintiff in the sum of $25,000.00.
The plaintiff, on August 28, 1963, filed an application for the apportionment of judgment, setting forth that as of August 20, 1963, the appellant had paid plaintiff compensation benefits in the total sum of $2360.25, that as of such date there remained liability for payment by the insured to the plaintiff, weekly compensation benefits for 275 weeks or a total of $8654.25, except in the event of the death or remarriage of the plaintiff within said period, the liability of the insurer for payment of future benefits would terminate; the total compensation benefits, paid and to be paid, amount to $11,014.50; William Ray Grice was employed by Swift & Co. on February 17, 1960, and continued in such employment until his death on March 13, 1962; between those two dates the deceased worked 22 1/2 months and earned an average monthly salary of $300.17 or an average annual salary of $3,002.04 (Sic); the deceased at the time of his death was 22 years of age and had a life expectancy of 46.75 years; the plaintiff at the time of her husband's death was 21 years of age and had a life expectancy of 52.17 years; deducting one-third of his annual income for his personal expenses and reducing the loss of probable future earnings to its present value using a four per cent interest rate, the plaintiff has suffered a dollar loss of $44,045.75; in addition to the loss of earnings, the plaintiff has lost the comfort, protection, society and marital relationship at and prior to her husband's death, her anticipated legacy and her station in life that might be acquired and by placing a dollar value of $98,202.00 as a loss, in the aggregate, upon the several elements above set forth and reducing that amount to its present worth, using a four per cent interest rate, the plaintiff has sustained an additional loss of $38,531.95, making the plaintiff's total compensable loss amount to $82,577.69; a judgment of $25,000.00, predicated upon a jury verdict in that amount, has been entered in this cause and the said judgment should be prorated and distributed in the manner provided in Section 440.39(3) (a) F.S.A.; the plaintiff has contracted and must pay her attorneys 33 1/3 per cent of the judgment as their fee for services in this case and after deducting the attorneys' fee, the plaintiff will have a net recovery of $16,666.67; her net recovery is 20 1/5 per cent of her compensable losses of $82,577.69; the pro rata recovery by the insurer (20 1/5%) of the benefits paid and to be paid would be $2,224.93; and the plaintiff and the insurer have been unable to agree on the portion of said judgment to be paid to each of them.
*836 The Court entered an order on such application, as follows:
"The application for an order apportioning the judgment in the above cause between the plaintiff and Security Mutual Casualty Company, the workmen's compensation carrier, coming on to be heard, and the Court being advised in the premises finds:
"The plaintiff in this case is an attractive young woman in her early twenties, with no children, and in the normal course of events can be expected to remarry. Should she remarry the liability of the carrier to her will terminate.
"The jury awarded plaintiff the sum of $25,000.00 for her damages, but a verdict of $100,000.00 would not have been excessive, provided the plaintiff remained single for the rest of her life. The attorney for the defendant argued the possibility of remarriage, and the Court is of the opinion that the jury took this into consideration in fixing the damages.
"Should the Court allow the carrier the full amount of its past and future liability, there is no way provided by the statute for plaintiff to recover the amount she has not received, in event she does remarry before the carrier makes full payment.
"It seems equitable to the Court to allow the carrier 35% of its total claim or $3,855.08. Plaintiff's attorneys are entitled to a fee of $1,250.00 out of this amount. There are no special costs to be charged to the carrier.
"It is ORDERED AND ADJUDGED that the Security Mutual Casualty Company be apportioned $3,855.08 of the judgment in the above cause, out of which it shall pay plaintiff's attorneys the sum of $1,250.00 as fees for their services in said action."
The insurance carrier appeals from such order.
Section 440.39, sub-sections (3) (a) and (4) (a), provide:
"Compensation for Injuries where third persons are liable
* * * * * *
"(3) (a) In all claims or actions at law against a third party tort-feasor, the employee, or his dependents, or those entitled by law to sue in the event he is deceased, shall sue for the employee individually, and for the use and benefit of the employer if a self-insurer, or employer's insurance carrier, in the event compensation benefits are claimed or paid, and such suit may be brought in the name of the employee or his dependents or those entitled by law to sue in the event he is deceased, as plaintiff, or, at the option of such plaintiff may be brought in the name of such plaintiff and for the use and benefit of the employer or insurance carrier, as the case may be. Upon suit being filed the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, which said notice shall be recorded and the same shall constitute a lien upon any judgment recovered to the extent that the court may determine to be their pro rata share for compensation benefits paid or to be paid under the provisions of this law, based upon such equitable distribution of the amount recovered as the court may determine, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for plaintiff's attorney, such proration of court costs and attorney's fees to be made by the judge of the trial court upon application therefor and notice to adverse party. Notice of suit being filed and notice of payment of compensation benefits shall *837 be served upon the compensation carrier and upon all parties to the suit, or their attorneys of record.
* * * * * *
"(4) (a) If the injured employee or his dependents, as the case may be, shall fail to bring suit against such third party tort-feasor within one year after the cause of action thereof shall have accrued, the employer if a self-insurer, and if not, the insurance carrier, may institute suit against such third party tort-feasor either in his own name or as provided by sub-section (3) of this section, and in the event suit is so instituted shall be subrogated to and entitled to retain from any judgment recovered against or settlement made with such third party, the following: All amounts paid as compensation and medical benefits under the provisions of this law and the present value of all future compensation benefits payable, to be reduced to its present value, and to be retained as a trust fund from which future payments of compensation are to be made, together with all court cost, including attorney's fees expended in the prosecution of such suit, to be prorated as provided by sub-section (3) of this section. The remainder of the moneys derived from such judgment or settlement to be paid to the employee or his dependents, as the case may be."
Appellant contends that since the jury determined the plaintiff's damages to be $25,000.00, plaintiff's damages are liquidated at such amount and plaintiff should recover such amount and no more and contend that if the order appealed from is allowed to stand, plaintiff stands to recover an amount in excess of $32,000.00; that is, $21,144.92 under the judgment, plus $11,014.50 from the carrier, or a total of $32,159.42; further, that since all damages which plaintiff was entitled to recover were in fact liquidated in the verdict and determined by the jury to be full and complete damages, the appellant is entitled to full recovery of benefits paid; that although this case comes under the provisions of Section 440.39(3) (a), rather than 440.39(4) (a), a consideration of the statute as a whole is necessary to determine its scope and purpose and asserts that the aim of subrogation clauses within compensation statutes are to give the employer or his insurer who has paid the compensation benefits a means of recoupment, citing United States Casualty Co. v. Hume, Fla.App. 1959, 112 So.2d 49, and General Guaranty Insurance Company v. Moore, Fla.App. 1962, 143 So.2d 541, and as the plaintiff has recovered full and complete damages, as determined by a jury and as such recovery exceeded the amounts paid or to be paid by appellant, under F.S. Chapter 440.16, F.S.A., the lower court erred in entering its order of apportionment in that it failed to give appellant full recovery of benefits paid and to be paid; asserting that had the lower court granted full recoupment, it would not in any way have reduced the plaintiff's recovery of her full and complete damages. In other words, it is appellant's contention that, under the facts of this case, there is no basis for any "equitable distribution of the amount recovered as the Court may determine."
In cases instituted under Section 440.39(3) (a), Florida Statutes, F.S.A., where a settlement is made between the plaintiff and a third party tort-feasor, the authority of the Court to make an "equitable distribution of the amount recovered as the Court may determine" is no longer open to question. Southern Farm Bureau Casualty Insurance Co. v. Bennett, Fla.App. 1961, 131 So.2d 499; General Guaranty Insurance Company v. Moore, supra; and Hartford Accident and Indemnity Company v. McNair, Fla.App. 1963, 152 So.2d 805.
In Pursell v. Sumter Electric Co-operative, Inc., Fla.App. 1964, 169 So.2d 515, which involves a recovery upon judgment on stipulation, and in Baughman v. Aetna Casualty & Surety Company, Fla. 1955, 78 So.2d 694, which involves a recovery upon trial, the trial court ordered full reimbursement; however, the question of the authority of the *838 trial court to make an equitable distribution of something less than full reimbursement was not directly before the appellate court for review and therefore these cases afford no answer to the question under consideration.
In General Guaranty Insurance Company v. Moore, supra, this Court stated, (143 So.2d page 545):
"It is readily observed that in cases arising under subsection (3), quoted above, the carrier can and often does receive substantially less than its actual compensation outlay for it is entitled thereunder to only its `pro rata share' of the amount recovered from the defendants `based upon such equitable distribution of the amount recovered as the court may determine.' The `equitable distribution' to the carrier rarely equates with or approaches actual compensation outlay. See Arex Indemnity Co. v. Radin, Fla. 1954, 72 So.2d 393; Employers Insurance Co. of Alabama v. Miller [Fla.App., 121 So.2d 813], supra.
"Such a discrepancy between the two sub-sections as to amounts allowed to be recovered by the carrier is simply legislative encouragement to the injured workman to bring his common law action against third party tortfeasors with minimum delay. Obviously he will fare better as to the amount he ultimately recovers by bringing his own action, for the amount recoverable by the carrier in this event is statutorily curtailed. Likewise, this monetary encouragement to the employee, statutorily imposed, to bring his action within one year serves to promote the laudable objective of speedy compensation to all aggrieved parties.
"As stated by Larson in Volume 2 of his treatise on Workmen's Compensation, § 74.31, p. 209:
"`Under most subrogation statutes the payor of compensation gets reimbursement for the amount of his expenditure as a first claim upon the proceeds of the third-party recovery, and the employee gets the excess. Some of the leading compensation states are beginning to vary this slightly. In Massachusetts the employee gets only four-fifths of the excess, presumably on the theory that the subrogee will thereby have a greater incentive to sue or settle for more than the bare amount necessary to cover the compensation expenditure. In New York the employee gets the entire excess over the employer's compensation outlay if the employee himself is the plaintiff, but only two-thirds if the employer or insurer is the plaintiff. This gives the employee, who under the New York statute has the first opportunity to sue, a financial motivation for taking direct action against the tortfeasor; it also impels the subrogee, if the cause of action passes to him, to achieve as large a recovery as possible, and to refrain from the temptation of making an easy settlement for no more than the out-of-pocket compensation cost. Wisconsin has varied the formula in the other direction by specifying that the employee must always be paid, at the absolute minimum, one-third of the damages recovered, regardless of whether this cuts into the amount needed to reimburse the carrier; and, in any case, the employee receives the entire excess over compensation outlay and costs.'"
Our Supreme Court has repeatedly held that in the absence of a law or a contract specifically providing for it, insurance companies do not have the right of subrogation against the party causing such injury. Fidelity & Casualty Co. of New York v. Bedingfield, et al., Fla. 1952, 60 So.2d 489-495; Arex Indemnity Co. v. Radin, et al., Fla. 1954, 72 So.2d 393-395; *839 Cushman Baking Co., et al. v. Hoberman, et al., Fla. 1954, 74 So.2d 69-71.
In Fidelity & Casualty Co. of New York v. Bedingfield, et al., supra, we further find this pronouncement:
"* * * In this case without the Statute, the compensation insurer would have no right of subrogation. Workmen's Compensation Laws are enacted because they deal with a matter of great public interest and are enacted under the police power of the State. When compensation insurers seek or accept the benefits of subrogation as provided for by the law, they must also accept the rules, regulations, burdens and conditions which go with the right of subrogation as provided by law."
Also in Arex Indemnity Co. v. Radin, et al., supra, our Supreme Court stated:
"The Court ordered Radin to pay to appellant the sum of $1,500 as `the pro rata share which this Court has determined to be the equitable distribution of the amount recovered.' Parenthetically, we think the words `pro rata' used in the amendment, when considered in the light of the remainder of the paragraph and its evident purpose, must be construed in its broadest aspect and not in a technical manner. This is particularly evident when such pro rata distribution is to be based on equitable considerations.
"The appellant contends the Court abused its discretion. It admits the statute contains no precise formula for computation but ingeniously improvises and asserts that since the Radin settlement represents 47.8% of the judgment amount, appellant should have from the recovery 47.8% of its claim asserted or a share amounting to $14,383.80 before taking into account its share of attorneys' fees and costs.
"Radin, on the other hand, contends that even if he does recover the $30,000 payable $75 weekly, which is doubtful, he still will have received $30,000 less than what the jury determined to be the present value of his damage and that on an equitable basis he should not be required to take out of pocket for benefit of the insurance company which received premiums for the exposure of the risk.
"The sole question is whether under the circumstances set out the Court abused its discretion in determining the amount to be allocated to appellant.
"The quoted portion of Section 440.39(3) was the result of amendment made in 1951 to the Workmen's Compensation Act. Prior to the amendment the employee accepting coverage had no right to bring or control on his own action for his injuries against a third party tort feasor but was `at the mercy of the employer or the insurance carrier' which alone had the right of action so that situations arose which `resulted at times in injustice to the employee' and it was to correct those evils that the amendment was made. Fidelity & Cas. Co. of New York v. Bedingfield, Fla. 1952, 60 So.2d 489, 493. In that case we also observed that the compensation carrier had no right of subrogation except that given by the statute; and that is the accepted principle. See 2 Larson, Law of Workman's Compensation 206, Section 74.11.
"We do not think the formula urged by appellant, nor any criterion which attempts to apply exact mathematical calculations to circumstances such as these, is consistent with the language of the statute involved.
"An endless variety of situations may arise in cases where an employee covered by compensation through his own initiative effects a recovery against a third party tort feasor. The situations *840 may include in given case, a wide or narrow range between amount of medical expenses and pain and suffering involved, wide disparity between the amount of actual damage sustained and the actual recovery possible on any judgment obtained, and a wide range of difficulties attending the litigation itself and the uncertainty of recovery therefrom after final judgment.
"We think any effort to establish a precise formula to encompass all variables that may be present in situations arising under Section 440.39(3), supra, would be a simple case of judicial legislation. The statute sets up and prescribes the standard. If the language there used is undesirable, the matter is one for legislative action."
In Cushman Baking Company v. Hoberman, supra, Herbert Hoberman was an employee of Cushman Baking Company and, while driving a truck in the scope of his employment, was killed due to the claimed negligence of the third party. He left surviving him a young widow and a posthumous child, which was born a few months after his death. The insurance carrier paid benefits totaling $1413.97 to the widow and child, while the widow prosecuted a claim against a third party and recovered $75,000.00 from such third party, because of the wrongful death of her husband. The insurance carrier and employer had full knowledge of the suit being prosecuted against the third party, but no steps were taken by the insurance carrier or the employer, as provided by F.S. Section 440.39(3), F.S.A. A notice was given by the widow that she would apply for an order of distribution. Upon hearing, the court entered an order awarding the carrier $4,000.00 as its pro rata share of the amount recovered, which the court determined to be equitable distribution to which the compensation carrier is entitled to for its past and future compensation payments. The insurance carrier stopped all payments and the widow filed her claim for compensation under the Workmen's Compensation Law. The insurance carrier resisted the claim of the widow on the ground that compensation under the terms of F.S. Section 440.16, F.S.A. ceased when the widow recovered from the third party and the court made its order of distribution. The Deputy Commissioner denied continued compensation to the widow. The Full Commission reversed the Deputy Commissioner. Upon petition for certiorari the Court stated:
"The right of the widow to receive compensation under Section 440.16, F.S., F.S.A., was not destroyed because the death of her husband was due to the negligence of the third party while the husband was driving a truck in the scope of his employment and because she recovered from such third party as authorized by Section 440.39 (3), F.S., F.S.A. She was entitled to the benefits provided for by Section 440.16, F.S., F.S.A., whether she recovered from the third party or not and the carrier was entitled to limited subrogation provided for by the statute and under the terms and conditions set forth in the statute. Without the statute the insurance carrier would be entitled to no subrogation rights. Fidelity & Cas. Co. of New York v. Bedingfield, Fla., 60 So.2d 489." (Italics supplied)
Under the above authorities, it is apparent that the appellant's right arises solely by virtue of the statute, Section 440.39 (3) (a), and its right is subject to such equitable distribution of the amount recovered as the Court may determine. Such statute provides a broad discretion to be exercised by the trial judge upon equitable considerations. Hartford Accident and Indemnity Company v. McNair, supra.
If an equitable distribution is not to be permitted in cases such as this, it is a subject for legislative and not judicial determination. See Arex Indemnity Co. *841 v. Radin, supra, and Shelby Mutual Insurance Company v. Russell, Fla. 1962, 137 So.2d 219-222.
It has not been shown that the trial judge abused the discretion allowed by the statute in arriving at the sum awarded.
The order is affirmed.
ALLEN, Acting C.J., and WHITE, J., concur.