162 So.2d 916 (1964)
Cecil King FORSYTH, Petitioner,
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, a New York corporation, etc., and Clayton Register, Respondents.
No. F-203.
District Court of Appeal of Florida. First District.
April 14, 1964.
J.B. Hodges, Lake City, for petitioner.
H.W. Russell, Brannon, Brown, Norris & Vocelle, Lake City, Nathan Wilson, and Dawson, Galant, Maddox & Sulik, Jacksonville, for respondents.
WIGGINTON, Judge.
One of the judges of the Circuit Court of the Third Judicial Circuit for Columbia County has certified to this Court, in accordance with the applicable rule pertaining *917 thereto,[1] the following propositions of law for our determination:
"WHERE AN INSURED HAVING PARTIAL INSURANCE COVERAGE AND THE INSURANCE CARRIER ASSERTS ITS RIGHT OF SUBROGATION CLAIMING THE ENTIRE AMOUNT DESPITE THE FACT THAT THE SETTLEMENT WAS ON A PARTIAL BASIS, AND THE INSURANCE COMPANY FAILED TO MAKE OR OFFER TO MAKE ITSELF A PARTY TO THE ACTION AGAINST THE DEFENDANT OR IN ANY MANNER TO ASSIST IN THE PROSECUTION OF THE CLAIM, OR CONTRIBUTE TOWARD THE SUIT EXPENSES, ALTHOUGH HAVING FULL KNOWLEDGE OF ITS PENDENCY AND OBJECT, AND HAVING SPECIFICALLY ADVISED PLAINTIFF'S COUNSEL NOT TO REPRESENT SUCH INSURANCE COMPANY:
"(A) IS THE INSURED ENTITLED TO RETAIN A PROPORTIONATE SHARE OF THE EXPENSES, INCLUDING ATTORNEY FEES INCURRED IN THE RECOVERY FROM WHICH THE INSURANCE COMPANY WILL BENEFIT TO THE EXTENT OF ITS SUBROGATION CLAIM, UPON A SUPPLEMENTAL PETITION THEREFOR? AND
"(B) IS THE ATTORNEY FOR THE INSURED ENTITLED TO ATTORNEY FEES FOR HIS SERVICES IN SUCH PROCEEDINGS FOR THE RECOVERY OF INSURED'S PROPORTIONATE SHARE, COSTS AND ATTORNEY FEES INVOLVED?"
The circuit judge certifies that the question of law above stated is determinative of the cause; is without controlling precedent in this state; can be answered without regard to the other issues in the cause and without affecting the jurisdiction of this Court or the circuit court; and, an answer to the question by this Court will facilitate the proper and final disposition of the cause. It is our view that the question certified to us is entitled to an answer.[2]
The facts out of which the foregoing certified question arose, and which are not in dispute, may be briefly summarized as hereinafter set forth. Plaintiff, Forsyth, owned an automobile on which he procured a policy of insurance from Columbia Casualty Insurance Company of New York. The policy, among other things, insured Forsyth against loss resulting from property damages suffered by his insured vehicle. A collision occurred between the vehicle owned and operated by Forsyth and another owned by defendant Southern Bell Telephone and Telegraph Company and operated by its employee, Clayton Register.
Forsyth reported the property damage loss to Columbia Casualty who in turn *918 paid Forsyth the full amount of his loss, less the agreed deductible amount set forth in the insurance policy. At the time of this payment, Columbia Casualty took from Forsyth an executed document entitled "Loan Receipt" in which Forsyth acknowledged receipt of payment from Columbia Casualty in the sum of $604.12 as a loan, without interest, which amount was repayable only in the event of a recovery by Forsyth against any third person responsible for the damages suffered by his motor vehicle. As a part of the loan agreement Forsyth covenanted to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, through whose negligence the loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his own name, but at the expense of and under the exclusive direction and control of the said Columbia Casualty Insurance Company.
Columbia notified Southern Bell in writing of its rights under the foregoing loan receipt and asked for a separate settlement of the amount due it. Southern Bell refused to settle a part of Forsyth's claim without a full release of the total amount of damages claimed by him.
Forsyth instituted suit against Southern Bell and Register, claiming damages for the personal injuries suffered by him as well as loss resulting from the damage to his motor vehicle, which latter loss had already been paid Forsyth by Columbia Casualty. Southern Bell and Register answered pleading general denial and contributory negligence. After suit was filed, Columbia Casualty notified Forsyth's attorney that the insurance company would handle the collection of its claim and the attorney was instructed not to represent Columbia Casualty's interest as far as its subrogation claim was concerned. Forsyth's attorney replied to Columbia Casualty requesting that he be advised as to who would handle their subrogation claim. Columbia Casualty replied that it was its intention to handle its claim directly with Southern Bell, and it did not feel at that time it was necessary to have legal representation. Thereafter, Columbia Casualty took no part in the pending litigation between Forsyth and Southern Bell.
After the foregoing transactions occurred and the case was set for trial, Forsyth's attorney entered into a settlement agreement with Southern Bell whereby the total amount of damages claimed by Forsyth was discounted by two-thirds resulting in a payment of $1,500.00 in full settlement of Forsyth's claim. The latter sum was paid in two drafts, one of which was in the exact amount of Columbia Casualty's payment to Forsyth of $604.12 and made payable to Columbia Casualty, Forsyth, and the latter's attorney; the remaining draft being for the balance of the settlement and payable only to Forsyth and his attorney.
After Forsyth's attorney received the Southern Bell draft in the sum of $604.12 payable as above stated, he made demand upon Columbia Casualty for payment of a reasonable attorney's fee for his services in recovering the fund realized by the settlement with Southern Bell, and a pro rata share of the court costs incurred in that litigation. Upon refusal of Columbia Casualty to comply with this request, Forsyth's attorney filed a petition before the Circuit Court of Columbia County alleging the foregoing facts and praying for the entry of an appropriate order for the disbursement of the funds held by him, allowing him a reasonable attorney's fee for the services rendered in producing the fund, and for a pro rata share of the court costs. Columbia Casualty answered the petition denying that Forsyth's attorney was entitled to the payment from it of any attorney's fee or court costs. It takes the position that Forsyth's attorney was not employed by it and he acted with notice that Columbia Casualty would handle its own claim and did not desire legal representation to effectuate recovery or settlement on its behalf.
*919 Under the conditions and obligations of the loan receipt given by Forsyth to Columbia Casualty, the former agreed to repay Columbia Casualty the amount of its outlay in the event of recovery by Forsyth from Southern Bell. Forsyth also obligated himself to institute and carry to a conclusion an action at law against Southern Bell for the damages so suffered by him. We emphasize at this point that the cause of action for damages against Southern Bell was vested in Forsyth alone. Since Columbia Casualty took from Forsyth only a loan receipt at the time it discharged its obligations under its insurance contract, it did not thereby acquire a separate cause of action which would have supported a suit by it against Southern Bell for the amount advanced under its insurance policy with Forsyth. Because of this, Forsyth had no option but to claim in his suit against Southern Bell not only damages for the personal injuries suffered by him, but also the property damages suffered by his automobile for which he had been previously reimbursed by Columbia Casualty. Had he failed to do this, he would have breached his obligations under the loan receipt and could not thereafter institute a suit in his name, or in the name of Columbia Casualty, to recover from Southern Bell the damages to his vehicle. Any attempt to have done this would have constituted a splitting of Forsyth's cause of action and foreclosed him from later recovering this element of his damages.[3] It was for the foregoing reasons that Forsyth insisted upon claiming the property damages to his vehicle in the suit which he filed against Southern Bell, despite the express notice from Columbia Casualty that it would handle its own claim against Southern Bell and did not desire Forsyth's attorney to represent it in the litigation. Columbia Casualty made no contribution to the recovery of the fund which formed the basis of the settlement in Forsyth's suit against Southern Bell. This fund was realized solely through the efforts of Forsyth's attorney and the expenditure of funds for court costs in connection therewith. Even though it contributed nothing to the realization of the fund, Columbia Casualty seeks from it full reimbursement for its outlay to Forsyth under its insurance policy, and objects to the payment of any attorney's fee or any part of the court costs incurred in realizing the fund.
A similar problem to that which now confronts this Court was involved in the case of United Services Automobile Association v. Hills, decided by the Supreme Court of Nebraska.[4] On facts essentially identical with those present in the case sub judice the court stated the underlying principles which formed the basis for its conclusion to be as follows:
"* * * Ordinarily the right of a lawyer to compensation for his services depends upon a contract of employment, express or implied. But there are exceptions to this general rule. One exception is stated in a well-known text as follows: `An attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his compensation out of the whole fund, only where his services are rendered on behalf of, and are a benefit to, the common fund.' 7 C.J.S. Attorney and Client § 193 b(2), p. 1098. And it is stated in the same section `and the mere fact that some of the persons interested have employed counsel and opposed the suit which has benefited them, will not prevent their interests from being subjected to the payment of reasonable compensation to counsel who has succeeded in recovering or preserving the fund which is brought into the custody of the court.'"
*920 Although conceding that the foregoing principles do not wholly sustain the claim of the attorney for the fees claimed by him, the court proceeded to state the applicable rule as follows:
"The applicable rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees. In the early case of Newcomb v. Cincinnati Ins. Co., 22 Ohio St. 382, 10 Am.Rep. 746, the rule was stated as follows: `Where the assured, as in case of partial insurance, sustains a loss, in excess of the reimbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. But if, by such action, there comes into his hands, any sum for which, in equity and good conscience, he ought to account to the underwriter, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. But the assured will not, in the forum of conscience, be required to account for more than the surplus, which may remain in his hands, after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery; unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution.'"
In rejecting the contention of the insurance company, United Services Automobile Association, in the case above cited, the Supreme Court of Nebraska held:
"United contends, however, that the foregoing rule does not apply where the insured is informed that its subrogation claim is not to be included in the litigation and it indicates an intention to pursue the enforcement of its right of subrogation in some other manner. It seems clear to us, however, that whatever intentions United may have had prior to the commencement of the present action, they were abandoned when it elected to pursue its general equitable right of subrogation against the avails of the settlement established by the efforts of the Dawsons and Hills. In other words, when United abandoned its previous hostile position and elected to seek the collection of its claim from the avails of the litigation and settlement secured solely by the efforts of the Dawsons and Hills, it brought itself squarely within the cited authorities. Under such situation, justice and equity require that United pay its proportionate share of the expenses, including attorney's fees, incurred by the Dawsons and Hills in establishing the fund from which United seeks to benefit."
We are impressed with the soundness of the principles adopted and the rule followed by the Supreme Court of Nebraska in the case last above cited. The factual situation present in the case we now review forms an exception to the general rule that an attorney may recover a fee for his services only when it is provided by law or is the subject of an agreement, either express or implied, between him and the person against whom recovery is sought. Such principles and rules are also a sufficient answer to the appealing proposition advanced by Columbia Casualty that one who has not employed an attorney and has expressly refused to permit such attorney to represent him should not be held liable for any part of the fee claimed by the attorney for services rendered another party.
When the occasion arose in this case where suit by Forsyth against Southern Bell was inevitable, Columbia Casualty was not without sufficient means of protecting itself against the contingency which has developed herein, if in good faith it desired *921 to do so. Firstly, when it reimbursed Forsyth for the amount of the property damage to his motor vehicle in accordance with the obligations of its insurance policy, Columbia Casualty could have taken from Forsyth an executed assignment and subrogation agreement as was done in the Rosenthal case.[5] By doing so, Forsyth's claim for damages against Southern Bell would have been divided into two parts, each constituting a separate and independent cause of action enforceable against the wrongdoer, Southern Bell. Under such an assignment and subrogation agreement Columbia Casualty would have been the owner of the cause of action for the property damage suffered by Forsyth's vehicle, and could have enforced its claim either by direct negotiations and settlement, or by suit separately instituted against Southern Bell. Such an arrangement would have left Forsyth free to pursue his remedy for personal injuries in a separate suit against Southern Bell without violating any obligations he may have owed Columbia Casualty by virtue of the payment received from it for the damages to Forsyth's vehicle. It affirmatively appears, however, that Columbia Casualty failed to place itself in a position of being able to legally avoid the payment of fees to Forsyth's attorney by demanding and receiving from Forsyth an assignment and subrogation agreement as above mentioned.
Secondly, Columbia Casualty could have fully protected itself under the loan agreement which it took from Forsyth in this case by employing its own counsel and cooperating with Forsyth's attorney in the prosecution of Forsyth's cause of action against Southern Bell. If Columbia Casualty made common cause with Forsyth in the latter's action to recover all the damages to which he was entitled in the case, Columbia Casualty would have been obligated only to its own attorney for fees incurred by virtue of the services he would have rendered in the case, and would not have been obligated to pay any part of the attorney's fee due Forsyth's attorney for the services which he rendered. It affirmatively appears, however, that Columbia Casualty elected to not employ counsel to represent its interest in Forsyth's action against Southern Bell, and made no contribution whatever to the successful culmination of that litigaton which resulted in the settlement and realization of the fund here disputed. After the fund was realized, however, it was then and only then that Columbia Casualty sought to enter the case and procure from the court an order awarding to it the full amount it paid Forsyth in the discharge of its obligations under the insurance policy issued by it.
Based upon the foregoing authorities, it is our view that so much of the question certified to us which asks whether the insured is entitled to retain a proportionate share of the expenses, including attorney's fee incurred in the recovery from which the insurance company will benefit to the extent of its subrogation claim, should be and is hereby answered in the affirmative.
With respect to the second phase of the certified question regarding the allowance of attorney's fee to Forsyth's attorney for bringing the petition for proration, attorney's fees and court costs, we are compelled to answer in the negative. This petition does not constitute a suit against Columbia Casualty under the insurance policy issued by it for which an attorney's fee would be allowable under F.S. Section 627.0127, F.S.A.[6] The suit *922 is in the nature of an action in rem against the fund of money received by Forsyth's attorney in settlement of the latter's claim against Southern Bell, which fund Forsyth has asked the court to distribute. We find no legal basis for allowing an attorney's fee to Forsyth's attorney in payment of services rendered in this supplemental proceeding.
STURGIS, C.J., and RAWLS, J., concur.
NOTES
[1] "Rule 4.6, Florida Appellate Rules [31 F.S.A.]  Certified Questions From State Courts.

"a. When Certified. When it shall appear to a judge of the lower court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this state and that instruction from the Court will facilitate the proper disposition of the cause, said judge, on his own motion or on motion of either party, may certify said question or proposition of law to the Court for instruction.
"b. Limitations On. Only questions or propositions of law that are definitely and concisely stated and that can be answered without regard to other issues in the cause will be considered by the Court. The certificate shall not be employed in such a way as to affect the jurisdiction of the appellate court or the lower court, and must be limited to those cases in which instructions will facilitate the final disposition of the cause."
[2] Scott v. Scott, (Fla. 1950) 45 So.2d 878.
[3] Mims v. Reid, (Fla. 1957) 98 So.2d 498.
[4] United Services Automobile Association v. Hills, (Neb. 1961) 172 Neb. 128, 109 N.W.2d 174.
[5] Rosenthal et al. v. Scott, (Fla. 1963) 150 So.2d 433.
[6] "Sec. 627.0127 Attorney fee

"Upon the rendition of a judgment or decree by any of the courts of this state against an insurer in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial judge shall adjudge or decree against the insurer and in favor of the insured or beneficiary, a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had. Except, that without any prejudice or effect whatsoever as to suits relating to other kinds of insurance, no such attorney fee shall be allowed in any such suit based on a claim arising under a life insurance policy or annuity contract if such suit was commenced prior to expiration of sixty days after proof of the claim was duly filed with the insurer. Where so awarded compensation or fees of the attorney shall be included in the judgment or decree rendered in the case."