193 So.2d 224 (1966)
Praxedes DeCESPEDES, Gladys DeCespedes, and Frieda Castillo, Appellants,
v.
PRUDENCE MUTUAL CASUALTY COMPANY OF CHICAGO, ILLINOIS, Appellee.
No. 66-1.
District Court of Appeal of Florida. Third District.
November 22, 1966.
Rehearing Denied January 19, 1967.
*225 Richard H. Reynolds, Miami, for appellants.
Hawkesworth & Kay, Miami, for appellee.
Before PEARSON, BARKDULL and SWANN, JJ.
SWANN, Judge.
The plaintiffs were injured when their automobile was involved in an accident with another automobile owned and operated by Tortfeasor, not a party to this suit. The plaintiffs admit to having settled their claims against Tortfeasor and admit to having executed releases. They now seek to recover a second time for their medical expenses under the medical payment provision of their automobile policy issued to the owner-driver of their car. No contention is made that the settlement was in any way inadequate to fully compensate them for their expenses.
The plaintiffs' policy contains the following subrogation clause:
* * * * * *
"* * * In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights." (Emphasis added)
* * * * * *
The question presented is whether an insured is entitled to a recovery under the medical payment coverage of an automobile policy containing the above subrogation clause after he has settled his claim against the third party tortfeasor and executed a full release. The trial court answered this question in the negative, and entered a summary judgment accordingly. We agree.
Insurance contracts or policies may be classified in two general categories, valued and non-valued. In situations where the feared loss is a subjective one, that is, such as to be unsusceptible to a precise financial evaluation, valued policies are employed. These contracts are most frequently found *226 where the subject of the insurance is life and death, or health.[1] The amorphous quality of the loss would make it futile in the vast majority of cases to even attempt to draw a line at which it might be said that indemnification ends and profit begins. Double recovery, therefore, is generally a vague threat and payments traditionally have been made independent of other sources of recovery which might be available to the insured.
It has been said in these cases that subrogation does not lie because the coverages are considered more in the "nature of an investment" or because the measure of payment is by the contract stipulation of the parties rather than by an assessment of the actual loss suffered by the insured. See Vance, Law of Insurance, 797 (3rd Ed. 1951); Gatzweiler v. Milwaukee Electric Co., 136 Wis. 34, 116 N.W. 633, 18 L.R.A.,N.S., 211 (1908); Suttles v. Railway Mail Ass'n, 156 App.Div. 435, 141 N.Y.S. 1024 (1913); Aetna Life Ins. Co. v. J.B. Parker, & Co., 30 Tex.Civ.App. 521, 72 S.W. 621 (1902), modified 96 Tex. 287, 72 S.W. 168 (1903); Harding v. Town of Townshend, 43 Vt. 536, 5 Am.Rep. 304 (1870).
Where the feared loss is susceptible to an objective financial determination, however, the principle of indemnity is applied (with a few rare exceptions). The primary purpose of this insurance is to indemnify the insured against loss, that is, to allow him a true restitution for the loss suffered. Now that a loss may be objectively estimated financially, the possibility of undue enrichment, profit or double recovery becomes obvious if steps are not taken to limit the sources of recovery that may be available to the insured. The insured must not be encouraged to use the coverage for profit as this intends to increase moral hazard and could ultimately undermine the whole concept of insurance.
The contract which the insured has purchased here is designed to protect or indemnify him against loss. Under this coverage, the insured is not entitled to receive a stipulated amount merely upon the happening of a specified event, but rather indemnification, within the limits of the policy, for his actual loss (i.e., medical expenses incurred). To effect this end and to minimize the risk of moral hazard or wager, various sanctions, such as subrogation, are taken to minimize the chances of the insured being allowed a recovery in excess of the actual loss.
The coverage provides:
* * * * * *
"Coverage C  Automobile Medical Payments. To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services."
* * * * * *
Although our courts have likened the medical payment provisions of an automobile policy to those of a personal accident policy,[2]this medical payment coverage is, nevertheless, fundamentally one of indemnity. See Damhesel v. Hardware Dealers Mutual Fire Ins. Co., 60 Ill. App.2d 279, 209 N.E.2d 876 (1965). By executing a release the insured has destroyed any possible right of subrogation and breached the clause that he will do nothing to prejudice that right. See American Fidelity Fire Insurance Co. v. Richardson, Fla.App. 1966, 189 So.2d 486, and Phoenix Insurance Co. v. Bowen, Fla.App. 1965, 178 So.2d 751, following Oren v. General Accident Fire & Life Assurance Corp., Fla. App. 1965, 175 So.2d 581, wherein we have held that an unauthorized release by the insured could preclude subsequent recovery *227 from the insurer under the uninsured motorist coverage of an automobile policy.
The contract of insurance is said to be a contract of utmost good faith,[3] and the law of insurance may be thought of as an extension of the law of suretyship.[4] To allow the insured to make a recovery under this coverage after he has made an apparently satisfactory settlement and executed a release in violation of the subrogation clause, is to allow him a windfall from his insurance not within the contemplation of the parties.
The plaintiffs argue that the subrogation clause amounts to an attempt to assign a claim for personal injuries, such an assignment being invalid under the common law and not expressly sanctioned by statute. We disagree, noting that such a clause has been enforced or upheld in New York, New Jersey and Illinois, among other states. See Application of Maak, 30 Misc.2d 610, 222 N.Y.S.2d 845 (1961); Smith v. Motor Club of America Ins. Co., 54 N.J. Super. 37, 148 A.2d 37 (Ch.Div. 1959), affirmed 56 N.J. Super. 203, 152 A.2d 369 (App.Div. 1959), cert.den. 30 N.J. 563, 154 A.2d 451 (1959); Bernardini v. Home & Automobile Ins. Co., 64 Ill. App.2d 465, 212 N.E.2d 499 (1965); Damhesel v. Hardware Dealers Mutual Fire Ins. Co., supra; Travelers Ins. Co. v. Lutz, 3 Ohio Misc. 144, 210 N.E.2d 755 (1964).
The concept of subrogation is distinct from that of a mere assignment. Subrogation is a "creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it * * * a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer." 16 Couch, Cyclopedia of Insurance Law, § 61:18 (2nd Ed. 1964).
Under the doctrine of subrogation, the insurer is substituted, by operation of law, to the rights of the insured. At common law, action was brought in the name of the insured.[5] It is not available to a volunteer,[6] only to one under a duty to pay. Furthermore, it is not available to an extent greater than the amount paid by the insurer, and then only after the insured has been fully indemnified.[7] By contrast, an assignment generally refers to or connotes a voluntary act of transferring an interest.[8] Assignments under certain circumstances are to be discouraged, in that they may encourage the presence of officious meddlers who are anxious to volunteer and stimulate litigation.
Subrogation serves to limit the chance of double recovery or windfall to the insured, and, when exercised, tends to place the primary liability upon the tortfeasor, where it belongs. See 3 Appleman, supra, § 1675. So long as subrogation, as applied to this medical pay provision, serves to bar double recovery, it should be upheld.
Admittedly, subrogation has been a two-edged sword. Unfortunately, it has frequently become a source of windfall to *228 insurers in that the anticipated recoveries under subrogation rights are generally not reflected in the computation of premium rates. See Patterson, Essentials of Insurance Law, § 33, (2nd Ed. 1957); 2 Richards, supra, § 183. This, however, is a legislative or administrative problem rather than one that bears on the inherent validity of such a clause. In any event, no argument is made here that there is any lack of consideration for the clause.
For the reasons stated, the summary final judgment is
Affirmed.
NOTES
[1] 3 Appleman, Insurance Law and Practice, § 1675 (1942); 1 Richards, Law of Insurance, § 1 (5th Ed. 1952).
[2] Government Employees Insurance Company v. Sweet, Fla.App. 1966, 186 So.2d 95.
[3] Vance, supra, 100.
[4] Vance, supra, 788.
[5] Vance, supra 792; Atlantic Coast Line R. Co. v. Campbell, 104 Fla. 274, 139 So. 886 (1932).
[6] Vance, supra, 791; 2 Richards, supra, § 201.
[7] Vance, supra, 790; 16 Couch, supra, § 61:29.
[8] For cases distinguishing between the concepts of subrogation and assignment, see 40 Words & Phrases, "Subrogation," (pp. 660 et seq.); 16 Couch, supra, § 61:92.