299 So.2d 661 (1974)
Christine WHITE, Appellant,
v.
RESERVE INSURANCE COMPANY, a Foreign Insurance Corporation, Appellee.
No. T-362.
District Court of Appeal of Florida, First District.
May 7, 1974.
Rehearing Denied June 20, 1974.
William H. Clark, of Harrell, Wiltshire, Bozeman, Clark & Stone, Pensacola, for appellant.
Robert P. Gaines, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellee.
BOYER, Judge.
On March 3, 1972, Christine White, the appellant, was severely injured in an automobile accident in which the driver of the other vehicle was at fault. Mrs. White subsequently settled her personal injury claim with the insurer of the tort-feasor's vehicle for $10,000. She concluded her settlement without the assistance of an attorney.
At the time of the accident Mrs. White was insured by Reserve Insurance Company, the appellee, under a policy of automobile liability insurance containing the "no-fault" endorsement prescribed by the Florida Automobile Reparations Reform Act.
Because Reserve Insurance Company had not paid any personal injury protection *662 benefits (PIP), Mrs. White employed an attorney to bring action for her "no-fault benefits." Suit was filed against Reserve Insurance Company in September, 1972. The action against Reserve resulted in payment to Mrs. White of the total sum of $1904.60, of which $1725.10 represented medical bills that should have been paid under the PIP benefits, and $179.50 represented attorney's fees and costs incurred by Mrs. White in bringing the action against Reserve.
When Mrs. White advised Reserve that the action against the third-party tort-feasor had been settled many months before, Reserve counterclaimed for a recovery of the sums it had paid under its "no-fault" coverage. A hearing was held in which the lower court received evidence concerning the nature and extent of the injuries sustained by Mrs. White, and expert testimony to the effect that if the third-party tort-feasor or his insurer had responded for the full value of Mrs. White's claim, she would have received at least $25,000.
In the action below Reserve took the position that F.S. 627.736(3)(a), F.S.A., requires that it be reimbursed to the full extent of its payment of PIP benefits. Mrs. White contended that 627.736(3)(a) and (3)(b) require that the insurer receive an equitable distribution of the proceeds of the settlement with the third-party tort-feasor, the amount of the distribution to be determined in the discretion of the lower court.
The trial judge entered an order finding that the provisions of F.S. 627.736(3)(a), F.S.A., and F.S. 627.736(3)(b), F.S.A., are in conflict and inconsistent. The court concluded that (3)(a) applies where recovery is more than the medical payments paid under the personal injury protection benefits while (3)(b) applies when less than the amount of the medical payments is received from the tort-feasor's insurer. The court declined to make an equitable distribution and entered a judgment requiring that Mrs. White return to Reserve the full sum paid to her.
This appeal was taken. The point to be resolved by us is whether the Florida Automobile Reparations Reform Act requires that the "no-fault" insurer be reimbursed by its insured according to an equitable distribution of the proceeds of the settlement with the tort-feasor when suit has been filed by the insured against the "no-fault" carrier and the amount of recovery from the tort-feasor by the insured exceeds the amount paid under the "no-fault" coverage.
In two paragraphs, the Florida Automobile Reparations Reform Act provides for reimbursement of a "no-fault" insurer (which has paid PIP benefits) from proceeds of a recovery from a tort-feasor. As set forth in the official compiled volume of the Florida Statutes, the first paragraph, numbered 627.736(3) (a), reads as follows:
(3) Insurer's rights of reimbursement and indemnity. 
(a) No subtraction from personal protection insurance benefits will be made because of the value of a claim in tort based on the same bodily injury, but after recovery is realized upon such a tort claim, a subtraction will be made to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, but only to the extent that the injured person has recovered said benefits from the tort-feasor or his insurer or insurers. If personal protection insurance benefits have already been received, the claimant shall repay to the insurer or insurers, out of the recovery, a sum equal to the benefits received, but not more than the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, but only to the extent that the injured person has recovered said benefits from the tort-feasor or his insurers or insurer. The insurer or insurers shall have a lien on the recovery to this extent. No recovery by an injured *663 person or his estate for loss suffered by him will be subtracted in calculating benefits due a dependent after the death, and no recovery by a dependent for loss suffered by the dependent after the death will be subtracted in calculating benefits due the injured person except as provided in paragraph (1)(c).
The next succeeding paragraph, numbered 627.736(3)(b), reads as follows:
(b) The insurer shall be entitled to reimbursement of any payments made under the provisions of this subsection, based upon such equitable distribution of the amount recovered as the court may determine, less the pro rata share of all court costs expended by the plaintiff in the prosecution of the suit to recover such amount against a third-party tort-feasor, including a reasonable attorney's fee for the plaintiff's attorney. The proration of the reimbursement shall be made by the judge of a trial court handling the suit to recover damages in the third-party action against the tort-feasor upon application therefor and notice to the carrier.
All who have had occasion to interpret these two paragraphs find the language confusing. (See State Farm Automobile Insurance Co. v. Hauser, Fla.App.3rd 1973, 281 So.2d 563, and Reyes v. Banks et al., Fla.App. 4th 1974, 292 So.2d 39.) Paragraph (3)(a) appears to provide a full return to the "no-fault" insurer to the extent that the injured person has recovered personal injury protection benefits from the tort-feasor or his insurer. Paragraph (3)(b) plainly provides that the return to the "no-fault" insurer shall be based upon an equitable distribution of the amount recovered from the tort-feasor or his insurer, the distribution to be made by a trial court.
It is pertinent to note that the language set forth in the official compiled volume of the Florida Statutes (and Florida Statutes Annotated) differs from the language actually enacted by the legislature as set forth in Laws of 1971, Ch. 71-252. The paragraph numbered 627.736(3)(b), as actually enacted, reads as follows:
"(b) The insurer shall be entitled to reimbursement of any payments made under the provisions of subsection (3) of this section based upon such equitable distribution of the amount recovered as the court may determine less the pro rata share of all court costs expended by the plaintiff in the prosecution of the suit to recover such amount against a third-party tort feasor including a reasonable attorney's fee for the plaintiff's attorney." (Laws of 1971, Ch. 71-252, § 7(3)(b). Emphasis added.)
The equivalent language found in Florida Statutes and Florida Statutes Annotated states:
"(b) The insurer shall be entitled to reimbursement of any payments made under the provisions of this subsection, based upon such equitable distribution of the amount recovered as the court may determine, less the pro rata share of all court costs expended by the plaintiff in the prosecution of the suit to recover such amount against a third-party tort-feasor, including a reasonable attorney's fee for the plaintiff's attorney. * * *" (Florida Statutes, § 627.736(3)(b), F.S.A.)
The language in Florida Statutes substitutes the words "this subsection" in place of the words "subsection (3) of this section." The difference is important because it seems to make clear that the intent of the Legislature, as set forth in the act, was to make the equitable distribution provision applicable to all cases arising under subsection (3) of the act, which would include both paragraphs (a) and (b).
The words "this subsection" in Florida Statutes by definition refers to the entire "subsection (3)" because paragraph (b) is not itself a subsection, nor is paragraph (a). The only subsection involved is subsection (3), including both paragraphs (a) and (b). Volume I of Florida Statutes 1971 contains in its Preface an explanation *664 of the numbering system. On page viii we find the following:
"The hierarchical arrangement of textual subdivisions is indicated by various designations. Thus, chapters are indicated by whole arabic numbers; sections, by numbers containing a decimal point; subsections, by whole arabic numbers enclosed by parentheses; paragraphs, by lowercase letters enclosed by parentheses; and subparagraphs, by whole arabic numbers followed by a period. Subdivisions beyond the subparagraph are not ordinarily used. (Emphasis added)
So it is, that the alteration of the language by the statute revisors, while adding to the confusion, does not change the meaning of the statute. The reference to "this subsection" makes the equitable distribution provision of the law applicable to all recoveries from third-party tort-feasors and their insurers.
We further observe that the literal language of paragraph (a) lends itself to the interpretation of requiring equitable distribution. The word "extent" is repeatedly used: First the paragraph provides that
"* * * a subtraction will be made to the extent of the recovery * * *"
then it repeats
"* * * but only to the extent that the injured person has recovered said benefits * * *."
Later there is a provision for repayment
"* * * only to the extent that the injured person has recovered said benefits * * *."
And finally
"* * * The insurer or insurers shall have a lien on the recovery to this extent. * * *" (All emphasis added)
In the case sub judice, as above recited, the settlement between Mrs. White and the tort-feasor's insurer was for the sum of $10,000 and the evidence before the court below was to the effect that the value of the claim was at least $25,000; therefore the extent of Mrs. White's recovery was two fifths or 40% of her claim.
Reserve might well argue that the $10,000 which Mrs. White recovered included all of her medical bills and a small portion of her claim for such intangibles as pain and suffering, disability, mental anguish, and loss of capacity for the enjoyment of life. Obviously, one could argue with equal logic that all of the $10,000 paid to her was for pain and suffering and none of it for medical bills. A fair minded arbiter would likely conclude that inasmuch as Mrs. White recovered 40% of the full value of her claim, she certainly recovered no more than 40% of her out-of-pocket expenses for medical bills.
While we readily concede that it would have been preferable for the legislature to have consistently employed the same terms in both paragraphs (a) and (b) of the statute, nevertheless we find no difficulty in harmonizing the two, and in that regard we differ from our sister courts wherein it was stated, in State Farm Automobile Insurance Co. v. Hauser, supra, that
"Paragraphs (a) and (b) of § 627.736(3) Fla. Stat., F.S.A. resist reconciliation." (Page 565 of 281 So.2d)
and in Reyes v. Banks, supra, that
"We agree with our sister court of the third district that paragraphs (a) and (b) of § 627.736(3), F.S.A., resist reconciliation. However, we go further to state that there is a positive repugnancy between paragraphs (a) and (b), and they are so inconsistent that they cannot be harmonized or reconciled. * * *"
However, with the holdings of each of those cases we concur.
The Court in the Hauser case affirmed the equitable distribution but reversed the amount of the distribution, specifically reciting the absence of a showing in the record "of facts or equitable considerations *665 sufficient to so limit the insurer's reimbursement."
In the Reyes case the Court found that the requirement of equitable distribution is applicable to both paragraphs (a) and (b) and set forth guide lines to be followed. We too find that there is a remarkable similarity between F.S. 627.736(3)(b), F.S.A., of the "no-fault" statute and F.S. 440.39(3)(a), F.S.A., of the Workmen's Compensation Statute. In that regard the Court in the Reyes case stated:
"The equitable distribution provisions of § 627.736(3)(b), Florida Statutes, F.S.A., are taken almost verbatim from the equitable distribution provisions of § 440.39(3)(a), Florida Statutes, F.S.A., the Workmen's Compensation Statute. Therefore, we look for guidance to those workmen's compensation cases which have been determined by the courts of this state wherein the equitable distribution principle has been applied. See Hardware Mutual Insurance Co. v. Roth, 222 So.2d 768 (Fla.App. 1969); Reznick v. Schwartz, 219 So.2d 713 (Fla.App. 1969); Zurich Insurance Co. v. Renton, 189 So.2d 492 (Fla.App. 1966); Security Mutual Casualty Co. v. Grice, 172 So.2d 834 (Fla.App. 1965); Luby Chevrolet, Inc. v. Foster, 177 So.2d 510 (Fla.App. 1965); Hartford Accident & Indemnity Co. v. McNair, 152 So.2d 805 (Fla.App. 1963); McAdams v. Armored Car Service of Florida, 139 So.2d 435 (Fla.App. 1962); Arex Indemnity Co. v. Radin, 72 So.2d 393 (Fla. 1954).
"It has been urged by the Florida Supreme Court that no criterion which attempts to apply exact mathematical calculations to equitable distribution situations would be consistent with the language of the Workmen's Compensation Statute. Arex Indemnity Co. v. Radin, supra. Applying this to the No-Fault Act we would be remiss to attempt to devise any precise formula which would encompass every variable that may be present in situations arising under the equitable distribution provisions (paragraph 3(b)). We feel, however, that the following guidelines should be taken into consideration by the courts in determining equitable distribution pursuant to the No-Fault Act:
"(1) The extent, if any, to which plaintiff failed to obtain full recovery for his entire damages;
"(2) The amount of the attorney's fee (which is usually a contingent fee and runs anywhere from 25% to 50% depending on the circumstances);
"(3) The amount of expense incurred in investigating and prosecuting the claim;
"(4) The amount (and value) of the time, inconvenience and responsibility involved on the part of the injured person (who may have not only missed work but have necessarily undergone much anxiety and worry in regard to the claim, the law suit, being "in court" for the first time in his life, etc.);
"(5) The fact that the client has to put up or stand good for the court costs, the investigation costs and other expenses of litigation while the carrier did not take this risk, and if the injured person has to end up paying all of these expenses without reimbursement, in the event of no recovery because of a defense verdict or no valid insurance or some other reason, it would be much harder on him ordinarily than it would have been on a large corporation. [Florida Trial Lawyers Journal 134, November 1973, pages 13-14.]
"The above should not be construed to be to be the only guidelines to determine equitable distribution. Time and experience will no doubt suggest further guidelines. The final determination, however, remains in the broad discretion to be exercised by the trial judge upon equitable considerations."
Although the exact point before us based upon the facts of this particular case, as *666 above recited, is rather narrow we expand our decision and hold that in the absence of unusual or unforeseen circumstances not now contemplated by us, "equitable distribution" is applicable to all cases (whether suit be filed or not) arising under F.S. 627.736(3)(a), F.S.A., and F.S. 627.736(3)(b), F.S.A.
Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent herewith.
The appellant filed a timely motion for attorneys' fees pursuant to Florida Statute 627.428, F.S.A. That motion is granted and the trial court is hereby directed and empowered to consider those matters incident to this appeal to be properly considered incident to the fixing and awarding of attorneys' fees including the novelty of the issues, the time required, the success which has been accomplished, and the experience of counsel and to thereupon fix an amount of attorneys' fees to be awarded to appellant's attorneys for the service rendered incident to this appeal; costs too incident to this appeal to be taxed in the lower court. (See Dawson et al. v. Blue Cross Association, Fla.App., 293 So.2d 90, opinion filed May 7, 1974.)
Reversed and remanded.
SPECTOR, Acting C.J., and JOHNSON, J., concur.

ON PETITION FOR REHEARING
BOYER, Judge.
Appellee has filed a timely petition for rehearing suggesting that we have overlooked the decision of our sister court of the Third District in State Farm Mutual Automobile Ins. Co. v. Mance, Fla.App. (3d) 1974, 292 So.2d 52. The opinion in that case was filed on March 26, 1974, after we heard oral arguments in the case sub judice but before we rendered our opinion. Indeed appellee is correct in his contention that we failed to consider that case. We have now carefully read the case and find nothing therein which changes our opinion.
We carefully pointed out in the opinion above that the evidence revealed that the extent of Mrs. White's recovery was two-fifths of her claim, ultimately holding
"Although the exact point before us based upon the facts of this particular case, as above recited, is rather narrow we expand our decision and hold that in the absence of unusual or unforeseen circumstances not now contemplated by us, `equitable distribution' is applicable to all cases (whether suit be filed or not) arising under F.S. 627.736(3)(a), F.S.A., and F.S. 627.736(3)(b), F.S.A."
We did not intend by our opinion, nor do we now intend, to hold that there can be no circumstances under which "equitable distribution" will not result in reimbursement of 100 percent to the carrier of the amount paid by it. On the contrary, should the trial court find (in the event of suit) or should it otherwise be determined, that the insured received a recovery to the "extent" of the full value of the claim, then "equitable distribution" would require 100 percent reimbursement to the carrier: Such appears to be the holding in State Farm Mutual Automobile Ins. Co. v. Mance, supra. We would not, however, go so far as to hold that the mere fact that the insured recovered from the tort-feasor (or the tort-feasor's carrier) incident to a settlement without suit leads to the inevitable conclusion, as a matter of law, that the insured enjoyed a total, full, complete recovery to the extent of 100 percent of the value of the claim. Common sense and experience dictates that such is not necessarily so.
We accordingly adhere to our opinion above, as here explained and expanded.
SPECTOR, Acting C.J., and JOHNSON, J., concur.