319 So.2d 36 (1975)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Fred E. GORDON and Juanita B. Gordon, His Wife, Appellees.
No. X-159.
District Court of Appeal of Florida, First District.
September 9, 1975.
*37 Richard S. Graham, of Landis, Graham, French, Husfeld, Sherman & Ford, Daytona Beach, and Dale O. Morgan, Orlando, for appellant.
Wesley A. Fink, of Fink & Loucks, Daytona Beach, for appellees.
BOYER, Chief Judge.
The primary issue presented by this appeal appears to be one of first impression. The briefs of the parties cite no "red cow" precedent nor does our independent research reveal any. That point is whether "equitable distribution"[1] is applicable to a subrogated claim arising as a result of an insurance carrier paying to its insured benefits under the medical pay provision of its policy of automobile liability insurance.
*38 Appellant, State Farm Mutual Automobile Insurance Company (State Farm) issued a policy of liability insurance insuring an automobile owned by appellees Fred E. Gordon (Mr. Gordon) and Juanita B. Gordon (Mrs. Gordon). While driving the insured automobile, Mr. Gordon was involved in an accident in which he was injured resulting in the incurrence of medical expenses in the sum of $3,425.71. State Farm paid $2,218.32 under the "medical pay" provision of its policy.
In a suit by Mr. and Mrs. Gordon against the other party who was involved in the accident (and that party's insurance carrier) a judgment was rendered in favor of Mr. Gordon in the amount of $47,000 and in favor of Mrs. Gordon for her derivative damages in the sum of $11,000. Although apparently aware of its pendency, State Farm did not participate in any manner in that litigation.
Upon State Farm demanding 100% reimbursement of the amount paid by it under its medical pay coverage the Gordons filed a post trial pleading[2] entitled "Motion to Establish Amount of Subrogation Interest of State Farm". A hearing was held on that motion, following which the trial judge entered an order holding that State Farm "shall be paid the sum of $443.66 in complete satisfaction of its subrogation claim for medical benefits paid to plaintiff under the medical pay provisions of its liability insurance policy", reciting that "it is the finding of the Court that State Farm Mutual Automobile Insurance Company is entitled to an equitable distribution, and the court having considered the evidence in the light of the guidelines as set forth in Reyes v. Banks, [Fla.App. 4 (1974), 292 So.2d 39] does find that State Farm Mutual Automobile Insurance Company is equitably entitled to be reimbursed 20% of the sum of $2,218.32 heretofore paid as medical benefits". State Farm here appeals that order.[3]
In White v. Reserve Insurance Company, supra, we recited guidelines to be taken into consideration in determining equitable distribution arising under the Florida "No-fault Act",[4] holding that in the absence of unusual or unforeseen circumstances equitable distribution is applicable to all cases arising under those statutes.[5]
In White v. Reserve Insurance Company, supra, we, citing and quoting from Reyes v. Banks, supra, acknowledged that we looked for guidance to cases wherein the equitable distribution principle had been applied in cases involving workman's compensation benefits.
It is appellant's contention that upon it paying medical pay benefits under its policy of insurance it became subrogated to the extent of such payments and that the trial court erred in failing to distinguish between a subrogation interest and an interest under a statute requiring equitable distribution, and that therefore the trial judge applied erroneous standards in relying upon the guidelines suggested in Reyes v. Banks, supra. Further, appellant urges in the alternative that even should it be determined that equitable distribution principles *39 are applicable to "pure subrogation cases" the trial judge nevertheless erred in awarding to State Farm only 20% of the amount of its subrogation interest.
Although cited and relied upon by both parties, we do not find DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill.[6] to be helpful under the facts sub judice. Employing rather broad language the writer of that opinion said:
"Under the doctrine of subrogation, the insurer is substituted, by operation of law, to the rights of the insured. At common law, action was brought in the name of the insured. It is not available to a volunteer, only to one under a duty to pay. Furthermore, it is not available to an extent greater than the amount paid by the insurer, and then only after the insured has been fully indemnified. By contrast, an assignment generally refers to or connotes a voluntary act of transferring an interest. Assignments under certain circumstances are to be discouraged, in that they may encourage the presence of officious meddlers who are anxious to volunteer and stimulate litigation.
"Subrogation serves to limit the chance of double recovery or windfall to the insured, and, when exercised, tends to place the primary liability upon the tort-feasor, where it belongs. See 3 Appleman, supra, § 1675. So long as subrogation, as applied to this medical pay provision, serves to bar double recovery, it should be upheld." (Footnotes omitted: 193 So.2d at page 227)
Were we to apply the above quoted language literally it would appear that we would be required to hold that a subrogated insurer is entitled to full reimbursement. However, the same writer also said in the same opinion:
"The concept of subrogation is distinct from that of a mere assignment. Subrogation is a `creature of equity having for its purpose the working out of an equitable adjustment * * *" (193 So.2d at page 227)
Although the last cited case involved the entitlement of an insured to recover under the medical pay provision of an automobile liability insurance policy, the real question was whether an insured who had already settled his claim against the tort feasor and executed a full release was then entitled to recovery of medical payment benefits from his insurer. The trial court held that he could not and the Court of Appeal affirmed. Upon consideration by the Supreme Court of Florida, that court held that the District Court correctly decided the question before it.[7] However, it is readily apparent that the question presented in the DeCespedes case is materially different from that sub judice.
In Central National Insurance Group v. Hotte, Fla.App. 1st 1975, 312 So.2d 235, this Court held the principle of equitable distribution to be applicable to a subrogation claim arising under the uninsured motorist provisions of an automobile insurance policy in the absence of a statutory guide and in the absence of a valid[8] agreement between the parties relative thereto. In that case, this Court said:
"Appellee contends that reimbursement to appellant should be governed by the general principles of subrogation and quotes the following from 46 C.J.S. Insurance § 1209(b), page 155, as the proper method for reimbursement:
`If insured obtains satisfaction from the wrongdoer and has previously received *40 payment of the loss from the company, he must account therefor to the company, the general rule being that the company may recover from insured only the excess, which insured has received from the wrongdoer causing the loss, remaining after insured is fully compensated for his loss and the cost and expenses of the recovery thereof.'" (312 So.2d at page 237)
In White v. Reserve Insurance Company, supra, our attention was directed to a legislative enactment requiring equitable distribution.[9] In DeCespedes v. Prudence Mutual Casualty Company of Chicago, Illinois, supra, the Court, though considering the medical pay provision of a policy of its automobile insurance, did not have before it an issue relating to equitable distribution. Further, in that case the policy of insurance was in evidence and a part of the record on appeal. In Central National Insurance Group v. Hotte, supra, this Court considered the issue relative to equitable distribution under an uninsured motorist provision of a policy, but not the medical pay provision. In the case sub judice, neither the subject policy of insurance nor the subrogation agreement (if there was one) was introduced into evidence nor do we have the benefit thereof in the record on appeal. We must, therefore, consider this particular case in the same posture as presented to the trial court,[10] and assume that appellant is relying entirely upon payment of medical benefits as entitling it to subrogation. Under that posture and under the circumstances of this particular case, we can see no logical distinction between the relationship of the parties sub judice and those in Central National Insurance Group v. Hotte, supra.[11]
The rule is so well settled as to render citations superfluous that an appellant has the burden of clearly demonstrating error in order to overcome the presumption of correctness of the actions and orders of the trial court.[12] We accordingly find that, in this case, the appellant has failed to demonstrate by the record that the learned trial judge erred in applying the principles of equitable distribution under the state of the evidence presented to him.
Turning now to appellant's contention that the amount awarded by the order here appealed was insufficient and therefore error, we find ourselves in the same position, viz: without sufficient facts to resolve that issue.[13] Although no criterion has been developed for the application of exact mathematical calculations to equitable distribution situations,[14] it goes without saying that such distribution should have foundation in logic and reason and should be based upon evidence, in the absence of a stipulation between the parties. In the case sub judice, the record is insufficient to either establish such foundation or to establish the absence thereof: We *41 accordingly lend to the order of the learned trial judge the presumption of correctness due.
Affirmed.
McCORD and MILLS, JJ., concur.
NOTES
[1] See White v. Reserve Insurance Company, Fla.App. 1st 1974, 299 So.2d 661 and cases therein cited; certiorari denied, Sup.Ct.Fla. 1975, 308 So.2d 113.
[2] Although State Farm was not a party to that action the record reveals that it responded to a notice of a hearing on the motion and appeared by counsel at the hearing, participating therein.
[3] The procedural propriety of State Farm appealing an order entered in a case affecting it, but to which it was not a party, has not been raised: We accordingly do not consider the issue, but treat the case for the purpose of this opinion, as though State Farm had in fact been a party to the suit in the lower court.
[4] Specifically F.S. 627.736(3)(a) and F.S. 627.736(3)(b).
[5] See also State Farm Automobile Insurance Co. v. Hauser, Fla.App. 3rd 1973, 281 So.2d 563; Reyes v. Banks, Fla.App. 4th 1974, 292 So.2d 39; State Farm Mutual Automobile Ins. Co. v. Mance, Fla.App. 3rd 1974, 292 So.2d 52; Catches v. Government Employees Insurance Company, Fla.App. 1st 1974, 295 So.2d 116 and Unigard Insurance Company v. Davis, Fla.App. 1st 1974, 299 So.2d 667.
[6] Fla.App. 3rd 1966, 193 So.2d 224.
[7] See DeCespedes v. Proudence Mut. Cas. Co. of Chicago Ill., Sup.Ct.Fla. 1967, 202 So.2d 561, two justices dissenting.
[8] In that case the insured had executed a trust agreement describing the insured as trustee and the insurer as the beneficiary, but the writer of the opinion recited that "We are unable to determine that there was any consideration for the trust agreement."
[9] As were the courts in Reyes v. Banks, supra, and the other cases cited in Footnote 5 above.
[10] That is, in the absence of any specific policy provision, assignment, subrogation agreement, trust agreement or other documentation.
[11] In the posture of the record in this particular case we are unable to determine the materiality, if any, of the holdings in Morgan v. General Insurance Company of America, Fla.App. 1st 1965, 181 So.2d 175; Blue Cross of Florida, Inc. v. O'Donnell, Fla.App. 3rd 1970, 230 So.2d 706; Forsyth v. Southern Bell Telephone & Telegraph Co., Fla.App. 1st 1964, 162 So.2d 916; Smith v. Ryan, Fla. App. 2nd 1962, 142 So.2d 139; and Ray v. Earl, Fla.App. 2nd 1973, 277 So.2d 73.
[12] See Rule 3.6, subd. b F.A.R.
[13] See State Farm Mutual Automobile Insurance Co. v. Beach, Fla.App. 1st 1975, 309 So.2d 179.
[14] Arex Indemnity Co. v. Radin, Sup.Ct.Fla. 1954, 72 So.2d 393, Reyes v. Banks, supra; White v. Reserve Insurance Company, supra and State Farm Mutual Automobile Insurance Company v. Beach, supra.