367 So.2d 687 (1979)
Luisa RODRIGUEZ, Appellant,
v.
TRAVELERS INSURANCE COMPANY, Appellee.
No. 78-688.
District Court of Appeal of Florida, Third District.
February 6, 1979.
Rehearing Denied March 9, 1979.
*688 Stabinski, Funt, Levine & Vega, Miami, for appellant.
Adams & Ward and Amy Shield Levine, Miami, for appellee.
Before KEHOE and SCHWARTZ, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
SCHWARTZ, Judge.
The plaintiff-appellant, Luisa Rodriguez, was severely injured in an automobile accident caused by the negligence of a man named Gomez who had $15,000.00 in liability insurance coverage with the South Carolina Insurance Company. Mrs. Rodriguez was herself insured under a Travelers Insurance Company policy which provided her with $5,000.00 in personal injury protection and $1,000.00 in medical payments benefits. After Travelers paid her the entire amount of each coverage, the plaintiff reached a settlement agreement with the third-party tortfeasor's insurer, South Carolina, for the full $15,000.00 limits of its policy.
Mrs. Rodriguez then filed  in an action pending only against Gomez and South Carolina  a "motion for equitable distribution,"[1] directed against Travelers, in which she contended that the "value" of the case was far more than $15,000.00, and sought an order determining the dollar amount of reimbursement to which her carrier was equitably entitled for the benefits it had paid under both the p.i.p. and medical payments provisions. After a hearing at which Travelers appeared and in which it was revealed that it had demanded $1,000.00 or 20% of the amount paid on its p.i.p. claim, the trial judge awarded $150.00, or 3% of that amount in equitable distribution. Neither party seeks review of that determination. However, the court denied outright the request for equitable distribution of the medical payments benefits, and also, apparently based upon its finding that Travelers had not negotiated the p.i. *689 p. equitable distribution controversy in "bad faith," denied the plaintiff's application for attorney's fees for the services involved in that proceeding. Mrs. Rodriguez challenges both of these rulings on this appeal. We affirm the former, and reverse the latter.
The trial court was correct in rejecting the plaintiff's attempt to equitably distribute the amounts paid under the medical payments coverage. According to the terms of the Travelers policy, which was in evidence below,[2] the insurance company, upon payment of these benefits, became subrogated to Mrs. Rodriguez's rights to recover those amounts against the third-party tort-feasor. Since this provision is valid and enforceable, DeCespedes v. Prudence Mutual Casualty Co. of Chicago, Ill., 202 So.2d 561 (Fla. 1967), aff'g., 193 So.2d 224 (Fla. 3d DCA 1966), and there is no statutory provision to the contrary,[3] we hold that its existence precludes the plaintiff's attempt, in effect, to reduce the amount paid based upon "equitable principles."
We think this result is required by our decision in Eckert v. Government Employees Ins. Co., 334 So.2d 119 (Fla. 3d DCA 1976).[4] The court there cited the DeCespedes case, supra, which involved medical pay coverage, in support of the conclusion that equitable distribution was not applicable, in the absence of statute, to payments made by an uninsured motorist carrier. At 334 So.2d 122, the court held:
"We note that the First District Court of Appeal has held that in such a case where the recovery is more than sufficient to reimburse the insurer-subrogee for the amount paid by it under the uninsured motorists coverage, the subrogee is not entitled to full reimbursement (less expenses of recovery) but is restricted to recovery of a portion thereof to be determined upon the basis of equitable distribution.[1] We are shown no statutory provision limiting recovery by the subrogee to a portion of its outlay on the basis of equitable distribution in such circumstance. We recognize that a statute which had provided for full recovery by the insurer in such an instance (§ 627.0851(4) Fla. Stat., F.S.A.) is no longer in effect and was not applicable in this case. However, it would appear that the insurer may so recover under the common law doctrine of subrogation,[2] and we so hold ..."[5]
"[1] Central National Insurance Group v. Hotte, Fla.App. 1975, 312 So.2d 235; State Farm Mutual Ins. Co. v. Gordon, Fla.App. 1975, 319 So.2d 36.
"[2] International Sales-Rentals Leasing Co. v. Nearhoof, Fla. 1972, 263 So.2d 569; DeCespedes v. Prudence Mutual Casualty Co. of Chicago, Ill., Fla.App. 1967, 193 So.2d 224 (aff'd on cert., Fla., 202 So.2d 561).
The absence of a separate statute for such recovery by an insurer will not operate to deny to it the right to sue and recover under the common law doctrine of subrogation."
See also International Sales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569, 571 (Fla. 1972); Public Health Trust of Dade County v. O'Neal, 348 So.2d 377 (Fla. 3d DCA 1977); Dade County v. Perez, 237 So.2d 781 (Fla. 3d DCA 1970); Dade County v. Bodie, 237 So.2d 553 (Fla. 3d DCA 1970).[6]
*690 As to the appellant's second point, we conclude that when, as here, the trial judge awards the p.i.p. carrier less than what it has demanded in equitable distribution, the insured is entitled to an attorney's fee under § 627.428(1), Fla. Stat. (1975). Accordingly we reverse that portion of the final order below which denied the plaintiff such an award. Essentially, we agree with the holding in Reliance Ins. Co. v. Kilby, 336 So.2d 629 (Fla. 4th DCA 1976) that fees should be awarded when the insured is successful in a judicial battle with his own p.i.p. carrier over the amount of equitable distribution to which the company is entitled under § 627.736(8), Fla. Stat. (1975). See also Catches v. Government Employees Ins. Co., 318 So.2d 552 (Fla. 1st DCA 1974), cert. denied, 333 So.2d 41 (1976); White v. Reserve Ins. Co., 299 So.2d 661 (Fla. 1st DCA 1974), cert. denied, 308 So.2d 113 (1975). The terms of the insurance attorney's fee statute, § 627.428(1), Fla. Stat. (1975), which requires only a "judgment [the final order entered below] ... against an insurer and in favor of an insured ... under a policy ... executed by the insurer ..." seem to us, as they did to the Fourth District in Kilby, clearly to apply to this situation.
We disagree, however, with the statements in both the Kilby and Catches cases, supra, that fees may be awarded under the statute only "when the insurer refuses or fails to negotiate in good faith." Reliance Ins. Co. v. Kilby, supra, at 336 So.2d 631; Catches v. Government Employees Ins. Co., supra, at 318 So.2d 553.[7] In our view, these statements are completely contrary to an unbroken line of Florida cases which hold that fees must be awarded when the statutory prerequisites are met, regardless of whether the insurance company has acted in bad faith or not. For example, in one of the earliest cases interpreting the present statute's original predecessor, New York Life Ins. Co. v. Lecks, 122 Fla. 127, 165 So. 50, 55 (1936), our supreme court held:
"A reasonable attorney fee to be adjudged in this case is indicated in the original opinion herein. Its recovery is a statutory right of the beneficiary, and the principles relating to the recovery of unjust penalties announced in Atlantic Coast Line R. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 So. 593, and Atlantic Coast Line R. Co. v. Connell & Schultz, 111 Fla. 572, 149 So. 596, 151 So. 381, do not supersede the affirmative statutory right of the beneficiary to recover reasonable attorney fees, even though payment under the policy was contested in good faith and upon reasonable grounds."
Accord, e.g., Pacific Mutual Life Ins. Co. of California v. McCaskill, 126 Fla. 82, 170 So. 579 (1936); Cincinnati Ins. Co. v. Palmer, 297 So.2d 96 (Fla. 4th DCA 1974); Salter v. National Indemnity Co., 160 So.2d 147 (Fla. 1st DCA 1964).
Indeed the Kilby case itself ably summarizes the practical reasons for the statutory provision for attorney's fees as they apply to this very situation:
"... as illustrated by the facts in the instant case, the amount of PIP benefits *691 is often relatively small. With PIP benefits of $778.86 to be apportioned, it would make no economic sense for the insured to seek judicial apportionment if the insured must pay his own attorney fee. The fees could very well equal or surpass the award of benefits. After all, the legal work of demonstrating the value of the claim falls on the insured. So, if an insured is not to receive an award of attorney fees, he or she is left to the mercy and dictates of the insurer in the amounts of apportionment." 336 So.2d at 631.
It should make no difference, however, in applying this policy, whether the carrier has made its demand in good or in bad faith or whether the insured wins a little or a lot[8] as a result of his action. Whenever an insured wins by judicial action, any amount in equitable distribution which his p.i.p. carrier was unwilling voluntarily to give him, he has secured a judgment in his favor to that extent and is therefore entitled to an attorney's fee under the statute. The order denying fees is therefore reversed and the cause remanded with directions to the trial court to fix such a fee in accordance with the applicable criteria.[9]
Affirmed in part, reversed in part and remanded.
NOTES
[1] The proceeding against Gomez and South Carolina (who settled the case without and before any litigation was commenced against them) consisted only of an unserved complaint filed a few days before in the Circuit Court, the only purpose of which was obviously to serve as a procedural means to secure jurisdiction for the determination of the amount of equitable distribution to which Travelers was entitled. This appears to be a common method of resolving such disputed issues between a plaintiff and his insurer or workmen's compensation carrier. If, as occurred in this case, the real adversary receives adequate notice of the application and a reasonable opportunity to be heard, we see no reason to disapprove of this relatively efficacious method of determining these issues, which are often the only ones which stand in the way of final settlements of tort claims.
[2] This fact decisively distinguishes this case from State Farm Mutual Automobile Ins. Co. v. Gordon, 319 So.2d 36, 40 (Fla. 1st DCA 1975), upon which the appellant relies.
[3] Compare White v. Reserve Ins. Co., 299 So.2d 661 (Fla. 1st DCA 1974), cert. denied, 308 So.2d 113 (Fla. 1975).
[4] The Eckert case was certified to the Supreme Court, but a petition for certiorari was not filed. The decision therefore remains authoritative on the issue in this district.
[5] Travelers thus may pursue Gomez and South Carolina to recover its subrogated $1,000.00 in medical payments. See Government Employees Ins. Co. v. Wheelus, 270 So.2d 409 (Fla. 4th DCA 1972). We are told that this sum is being withheld from the proposed settlement to Mrs. Rodriguez in order to satisfy this claim, but we of course express no view as to the outcome or effect of any such litigation. See Forsyth v. Southern Bell Telephone & Telegraph Co., 162 So.2d 916 (Fla. 1st DCA 1964).
[6] The dictum in Blue Cross of Florida, Inc. v. O'Donnell, 230 So.2d 706, 709 (Fla. 3d DCA 1970) which states that the amount recoverable by a subrogated hospitalization insurer is to be "based upon equitable considerations" is no longer controlling in the light of our later direct holdings to the contrary in the Eckert case and in this one.
[7] In view of the fact that the trial judge specifically found that Travelers was not guilty of "bad faith," it is obvious that this statement was the basis of the denial of fees below. It should be pointed out, however, that the Kilby case stated also, at 336 So.2d 631

"... that the trier of the fact can gauge that good faith or lack thereof by the percentage imbalance between that amount demanded and that judicially awarded to the insurer. Where, as here, the difference is gross, it is our judgment that the trial court was correct in finding a dispute and awarding fees."
In the Kilby case the "percentage imbalance" was that between 80% demanded and 18% awarded, which is less "gross" than the 20%-3% difference involved in this case. Thus, we would have to reverse the order below on the ground that the carrier was guilty of bad faith as a matter of law, even if we were to follow Kilby as to this aspect of the case. We might add to the reasons why we choose not to do so, as stated in the body of the opinion, the rather obvious practical impossibility of determining when a "percentage imbalance" is or is not so gross as to require a finding of bad faith, as well as the tota' lack of any theoretical or conceptual basis for making the result turn on any such determination.
[8] See n. 7, supra.
[9] 18A Fla.Jur., Insurance, § 932 (1971).